**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**LORETTA BENNETT**                                                          **PLAINTIFF**

**v.**                                                    **Cause No. 4:10-CV-133-CWR-FKB**

**THE GEO GROUP, INC.**                                                      **DEFENDANT**

<u>**ORDER**</u>

Pending before the Court is The GEO Group, Inc.'s ("GEO") motion for summary judgment. Docket No. 19.  Loretta Bennett opposes the motion.  Docket No. 24.  GEO also has moved to strike Exhibit "A" to Bennett's response in opposition to summary judgment.  Docket No. 31.  Bennett has not responded to the motion to strike despite this Court's Text Order of September 13, 2011 directing her to file her response.

I.      *Background*

The central issue in this discrimination case has become the adequacy of Bennett's evidence. Because Bennett did not serve her Rule 26 initial disclosures, respond to GEO's discovery requests, or propound discovery of her own, the Court previously struck as untimely Exhibits "B" through "W" attached to her response opposing summary judgment.  *See* Order of October 3, at Docket No. 34.  The only evidence that remains is Exhibit "A," Bennett's affidavit, which GEO has moved to strike as "riddled with conclusory allegations, hearsay (including hearsay within hearsay), unauthenticated documentation and evidence which would not be admissible at trial."  Docket No. 31, at 3.

II.     *Discussion*

A.      *Bennett's Affidavit*

It is well-established that "conclusory allegations supported by a conclusory affidavit will not suffice to require a trial."  *Shaffer v. Williams*, 794 F.2d 1030, 1033 (5th Cir. 1986); *see also Davis v. Louisville Municipal School Dist.*, No. 1:08-cv-249, 2010 WL 290956, *2 (N.D. Miss. Jan. 15, 2010) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.").

A thorough review of GEO's motion to strike and Bennett's six-page, 40-paragraph affidavit

supports that the affidavit contains a mix of admissible and inadmissible statements.  Docket No. 24, at 3-8.  The Court will grant GEO's motion in part, striking those statements that are conclusory, hearsay, based only on Bennett's subjective belief, contain legal arguments, or otherwise lack a sufficient factual basis.  *Hubbard v. Yazoo City, Miss.*, No. 3:10-cv-308, 2011 WL 2692972, *5 (S.D. Miss. July 11, 2011); *Harris v. Greenville Riverboat, LLC*, No. 4:10-cv-80, 2011 WL 3806250, *4 (N.D. Miss. Aug. 29, 2011).  The Court will also strike statements based solely upon Exhibits "B"-"W," since there would be no point in allowing evidence previously stricken by a discovery sanction to be resuscitated by an affidavit.  What remains will be discussed in its appropriate section below.

       B.    *Summary Judgment*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party seeking to avoid summary judgment must identify admissible evidence in the record showing a fact dispute.  *Id.* at 56(c)(1)-(2); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).  "Needless to say, unsubstantiated assertions are not competent summary judgment evidence."  *Forsyth*, 19 F.3d at 1533 (citation omitted); *see Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1429-30 (5th Cir. 1996) (en banc).  Nor can self-serving statements in an affidavit defeat summary judgment when viewed in light of "overwhelming evidence" to the contrary.  *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004); *see also DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005).  The Fifth Circuit instructs that:

> We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. . . . If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point[.]

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075-76 (5th Cir. 1994) (en banc) (emphasis and citation omitted).

Bennett's complaint alleged (1) racial discrimination, (2) hostile work environment, and (3) retaliation pursuant to 42 U.S.C. § 1981, as well as (4) negligent infliction of emotional distress pursuant to state law.  Docket Nos. 1-1, at 4-6.  GEO has moved for summary judgment on every

claim.  Docket No. 19.  The court will consider each in turn.

1.    Racial Discrimination

GEO primarily argues that Bennett was fired for a legitimate, non-discriminatory reason, namely, her record of poor work performance and unprofessional conduct.  Docket No. 20, at 8-9.  It claims Bennett has no evidence that its reasons for termination were fabricated.  *Id.* at 8.

Bennett responds that she has satisfied her standard, asserting that "[i]f race was a factor in the decision making in the face of mixed motives, Plaintiff can recover."  Docket No. 25, at 4.  She alleges instances in which black and white correctional officers were treated differently.  *Id.*

To make out a prima facie case of racial discrimination under 42 U.S.C. § 1981, a plaintiff must show that she is a member of a protected class, was qualified for the position, suffered an adverse employment action, and was either replaced by a person who is not a member of her protected class, or "was treated less favorably because of [her] membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances."  *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (citing *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005)); *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).  Bennett has established the first three elements of the prima facie case.

In the section of her brief addressing race discrimination, Bennett relies upon only those facts contained in paragraph 15 of her affidavit.  Docket Nos. 24, at ¶15; 25, at 4.  In fact, this portion of her brief and paragraph 15 of her affidavit are identical.  *See* footnote 2, *infra*.

One problem with Bennett's supporting factual recitation is that everything after the first four sentences is inadmissible for being based solely upon previously-stricken Exhibits "H"-"K".  *See* Order of October 3, at Docket No. 34.  The remaining four sentences read as follows:

On February 28, 2007, Officer Anthony Wofford was caught sleeping on duty.  Sleeping on duty is a termination offense and that was my recommendation.  Black officers who had been caught sleeping were summarily terminated.  Angela Cooley, Black female, immediately terminated for sleeping on the job.

Docket Nos. 24, at ¶15; 25, at 4.  These sentences do not support Bennett's race discrimination claim.  First, the employee alleged to have been subjected to differential treatment on account of her race was Angela Cooley, not Bennett.  Second, and fatally, Bennett has not provided any facts

3

supporting a conclusion that the officers who were treated more favorably than herself were similarly situated. *See Carr v. Murphy Oil USA, Inc.*, 269 Fed. App'x 378 (5th Cir. 2008) (unpublished); *Suggs v. Lowndes Cnty. School Dist.*, No. 1:09-cv-45, 2011 WL 1364015, *4-6 (N.D. Miss. Apr. 11, 2011); *Atterberry v. City of Laurel*, No. 2:09-cv-172, 2010 WL 2545412, *4 (S.D. Miss. June 18, 2010). Because Bennett has not satisfied the elements of the prima facie case, this claim fails.

### 2.      Hostile Work Environment

GEO argues that summary judgment is appropriate on the hostile work environment claim because Bennett has not identified any evidence of harassment. Docket No. 20, at 9-10. "In fact, to the contrary, the record shows that the Plaintiff's subordinates and supervisors alike did not believe the Plaintiff was subjected to hostile or abusive. Rather, they found *her* actions to be offensive." *Id.* at 10.[1]

Bennett's response contends that GEO's actions were sufficiently severe to have resulted in a hostile work environment in terms of both race and sex. Docket No. 25, at 12. She describes a supervisor who told her to "turn your bars in if you can't do your job," asked her "if she ever considered dating outside of her race" while pulling his pant legs up, and placed a pair of panties on a bulletin board. *Id.* at 14; Docket No. 24, at ¶¶5-6.

For a hostile work environment to be actionable, the conduct in question must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011). This Court must consider a variety of factors, including:

> the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. To be actionable, the work environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.

---

[1] These assertions are based upon an internal investigation into Bennett's claims conducted by Lepher Jenkins, a warden from another GEO-run facility, who had no direct involvement in managing the East Mississippi Correctional Facility where Bennett worked. Docket No. 20, at 3-5. GEO contends that "Warden Jenkins found concerns *not with the way in which the Plaintiff was being treated, but with the way she was treating others.*" *Id.* at 3 (citations omitted).

*Id.* (quotation marks and citation omitted).  "[N]ot all harassment, including simple teasing, offhand comments, and isolated incidents (unless extremely serious), will affect a term, condition, or privilege of employment." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009) (quotation marks and citation omitted).

Bennett's response on this issue is almost entirely conclusory.  The remainder – her specific allegations against her supervisor – does not allege facts rising to the level necessary to support a hostile work environment claim.  *See Hernandez*, 641 F.3d at 125; *Alaniz*, 591 F.3d at 771-72 (collecting cases).

The Court notes, but need not rely upon, the significant record evidence that Bennett was herself responsible for creating a hostile work environment.  GEO attached a copy of its internal investigation into Bennett's complaints, which was conducted by a Warden from another GEO-run facility.  *See* footnote 1, *supra*; Docket No. 19-8.  The investigator's report could not substantiate that Bennett was harassed, retaliated against, or made a target by the facility's administrators.  Docket No. 19-8, at 11.  That report could substantiate, however, that Bennett showed "unfair and adverse treatment" toward certain subordinate employees, and "created a Hostile Working Environment for several employees" of her team.  *Id.* at 12.

Summary judgment will be granted on the hostile work environment claim.

### 3.    Retaliation

GEO claims Bennett has failed to establish a prima facie case of retaliation.  Docket No. 20, at 11.  Specifically, it alleges that she cannot show that her protected activities caused her firing: "The record clearly shows that although the Plaintiff complained of perceived discrimination during her first year of employment with The GEO Group, she was not terminated until more than a year later, and only after numerous complaints about her conduct had been reported."  *Id.*  Alternatively, it argues that Bennett cannot show that its decision to terminate was a pretext for unlawful discrimination.  *Id.* at 11-12.

Bennett's response describes a series of complaints she made to GEO supervisors that allegedly fell on deaf ears and resulted in retaliation.  Docket No. 25, at 4-12.  From September 2006 onward, she complained about racial discrimination, sexual harassment, and retaliation that took the form of arbitrary and fabricated disciplinary actions, failures to investigate her claims, a biased investigator when GEO did investigate her claims, a cover up to pad her personnel file with false

allegations against her, "harassment, intimidation, threats," and perjury.  *Id.*

To establish a prima facie case of retaliation under Title VII or Section 1981, a plaintiff must show that (1) she engaged in activity protected by Title VII; (2) the employer subjected her to an adverse employment action; and (3) "a causal connection exists between the protected activity and the adverse employment action."  *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 992, 995 (5th Cir. 2005) (citation omitted).

On October 30, 2006, Bennett filed a charge of discrimination with the EEOC alleging retaliation for a job-related disability as well differential treatment on account of race.  Docket No. 19-4.  This qualifies as engaging in protected activity.  *Jones*, 427 F.3d at 995.  And "there is no question that termination of employment qualifies as adverse employment action."  *Jordan v. Ector Cnty.*, 516 F.3d 290, 295 (5th Cir. 2008) (citations omitted).  The remaining question, then, is whether Bennett has evidence showing a causal connection between her EEOC charge and her termination.

In reviewing the pleadings, the Court observes that Bennett's brief opposing summary judgment is mostly copied-and-pasted from Bennett's affidavit opposing summary judgment.  *Compare* Docket No. 24, at 3-8 (Affidavit) *with* Docket No. 25, at 4-12 (Brief).  The principal difference between the two is that Bennett's affidavit describes the facts using "I" and "me," while the brief – mostly – replaces those words with "Plaintiff."  *Id.*[2]  As described above, significant portions of Bennett's affidavit were stricken for being conclusory, otherwise inadmissable, or solely based upon other stricken Exhibits.  To the extent Bennett's brief is identical, those measures apply with equal force.

In any event, viewing the evidence in the light most favorable to Bennett more than confirms that she was terminated for legitimate, non-discriminatory reasons, and not in retaliation for her EEOC charge.  Among other things, Bennett was reprimanded for "willful insubordination" on September 22, 2006; chided about her treatment of her subordinates on March 1, 2007; admonished

---

[2]  On closer review, the Court sees that portions of Bennett's affidavit were also copied and pasted into those parts of her brief supporting her racial discrimination count (*compare* Docket No. 24, at ¶15 *with* Docket No. 25, at 4) and her hostile work environment count (*compare* Docket No. 24, at ¶¶5-6 and ¶¶36-37 *with* Docket No. 25, at 13-14).  Bennett's legal argument in support of her hostile work environment claim is also taken verbatim from elsewhere; this time, though, it is borrowed from GEO's brief in support of summary judgment.  *Compare* Docket No. 20, at 9-10 *with* Docket No. 25, at 12-13.

for violating company policies on March 5, 2007; and described by an company investigator as having "created a Hostile Working Environment for several employees" later that year. Docket Nos. 19-3; 19-6; 19-7; 19-8, at 12. Bennett's (mis)conduct, which began prior to the filing of her charge of discrimination and continued for months afterward, caused her termination. In addition, GEO is correct that Bennett has no evidence that her termination was a pretext for retaliation. Summary judgment will be granted on this claim.

           4.       Negligent Infliction of Emotional Distress

GEO contends that Bennett's state law claim of negligent infliction of emotional distress cannot be sustained because it requires evidence of a physical injury. Docket No. 20, at 12. Further, to the extent Bennett's claim is truly for intentional infliction of emotional distress, GEO contends that it is barred by a one-year statute of limitations. *Id.* at 13.

Bennett replies that the claim is for negligent infliction of emotional distress, which comes with a three-year statute of limitations and therefore was timely filed. Docket No. 25, at 14. She continues, "[w]e submit that the actions of Defendant in soliciting affidavits and testimony against Plaintiff was unconscionable and that the evidence will reveal a sinister plan that is beyond all decency and negates and right to protection under the Workers' Compensation Act." *Id.*

The Court may decline to exercise supplemental jurisdiction over this state law claim. 28 U.S.C. § 1367(c)(3). In the interests of "judicial economy, convenience, fairness, and comity," though, it is appropriate to rule and finally resolve this matter. *Wynn v. MS Dep't of Human Servs.*, No. 3:09-cv-717, 2011 WL 3423142, *7 (S.D. Miss. Aug. 4, 2011) (quoting *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir.1999)).

Summary judgment will be granted because there is no longer any record evidence that Bennett suffered physical or bodily injury, which is required to prove negligent infliction of emotional distress in Mississippi. *Franklin Collection Serv., Inc. v. Kyle*, 955 So. 2d 284, 290 (Miss. 2007). This claim is further barred by Mississippi's workers compensation statute. *Wynn*, 2011 WL 3423142, at *8 (citing Miss. Code § 71-3-9 and *McNeill v. City of Canton*, No. 3:06-cv-74, 2008 WL 249437, *15 (S.D. Miss. Jan. 29, 2008)).

Finally, the language Bennett uses in this portion of her brief is somewhat vague, as it describes "egregious" acts, an "intent to injure," and "intentional tort[s]," in addition to the "unconscionable" language already quoted. Docket No. 25, at 14. GEO is correct that to the extent

there is a charge of intentional infliction of emotional distress, it is barred by the one-year statute of limitations. *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (Miss. 2010).

III.     *Conclusion*

GEO's motion for summary judgment [Docket No. 19] is granted.  Its motion to strike [Docket No. 31] is granted in part.  A final judgment will issue separately.

SO ORDERED this the 22nd day of November, 2011.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE